IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ADVANCED RECOVERY SYSTEMS LLC,<br><br>     Plaintiffs,<br><br>vs.<br><br>AMERICAN AGENCIES LLC, a Pennsylvania limited liability company; NATIONAL RECOVERY AGENCY, a Pennsylvania limited liability company; and STEVN C. KUSIC, an individual.<br><br>     Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:13-CV-00283-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants' Rule 12(b)(6) motion to dismiss and Plaintiff's motion to amend the Complaint. The court held a hearing on October 3, 2013. At the hearing, Plaintiff was represented by Adam Stevens and Defendants were represented by Leisl Stevens. The court took the matter under advisement. After considering the briefs and materials submitted by the parties, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Advanced Recovery Systems (ARS) is a Utah limited liability company with its principal place of business in Provo, Utah. Defendants American Agencies (AA) and National Recovery Agency (NRA) are Pennsylvania limited liability companies with their principal places of business in Harrisburg, Pennsylvania. NRA is the parent company of AA. Defendant Steven C. Kusic is the Chief Executive Officer of NRA and is a resident of Pennsylvania.

On November 11, 2011, ARS and AA entered a license agreement that assigned exclusive rights to AA from ARS to use software for debt collection services. Under the agreement, ARS recruited independent licensees to AA and assisted in managing licensees within AA. In return, AA agreed to pay commissions to ARS. Under Section 3.1.5 of the License Agreement, AA is required to pay ARS the entire license fees collected from independent licensees.

Around January or February 2013, ARS alleges that Kusic offered to sell AA to ARS at a set price of $1.46 million with a payment plan of $200,000 down and financing the difference at 6% over five years. ARS accepted Kusic's offer and began negotiations for the sale. ARS further alleges that during these negotiations Kusic held himself out as the owner of AA and demanded a higher price for AA of $6 million.

In or around March 2013, ARS alleges that AA collected license fees, and, instead of paying those fees to ARS, AA requested that ARS forward $150,000 in license fees to AA. AA has failed to return to ARS the $150,000. ARS also alleges that AA has failed to reimburse ARS for travel expenses, totaling approximately $19,000, as required by Section 4.6 of the License Agreement.

ARS filed the instant action in this court, alleging causes of action for breach of contract under the License Agreement, breach of contract in the sale of AA to ARS, unjust enrichment, conversion of $150,000 in license fees, breach of covenant of good faith and fair dealing, and money had and received. ARS alleges that AA has failed to pay in full for all license fees received and that AA has habitually been late in paying the fees that have been paid.

## STANDARD OF REVIEW

When evaluating a Rule 12(b)(6) motion to dismiss, "the court presumes the truth of all well-pleaded facts in the complaint, but need not consider conclusory allegations." *Margae, Inc. v. Clear Link Tech.*, 620 F.Supp.2d 1284, 1285 (D. Utah 2009). "When there are well-pleaded factual allegations [as opposed to legal conclusions], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court should "construe the facts, and reasonable inferences that might be drawn from them, in favor of the plaintiff." *Padilla v. School Dist. No. 1*, 233 F.3d 1268, 1271 (10th Cir. 2000). Consequently, the well-pleaded factual allegations of the Complaint are presumed true at this point, and if they support the claimed relief, dismissal is improper.

After an answer is filed, a plaintiff may amend his complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Under this rule, "[t]he court should freely give leave" to amend pleadings "when justice so requires." *Id.*; see also *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A district court should refuse leave to amend only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quotations and citation omitted). The decision whether to allow a party to amend pleadings "is within the discretion of the trial court." *Minter v. Prime Equip. Co.,* 451 .3d 1 196, 1204 (10th Cir. 2006).

The outcomes of both motions are necessarily connected, and, therefore, both will be considered on a claim by claim basis.

**DISCUSSION**

Motion to Dismiss

Defendants move to dismiss Kusic and NRA as defendants, arguing that they cannot be liable for breach of the license agreement because they are not parties to the license agreement. Defendants also moved to dismiss ARS's claims for unjust enrichment, conversion, and breach of implied covenant of good faith and fair dealing asserting that such causes of action are redundant of the alleged breach of the License Agreement. Further, Defendants moved to dismiss ARS's claim for breach of a sales contract, arguing that no contract was ever formed. Lastly, Defendants move to dismiss ARS's claim for consequential damages. ARS opposes the motion and moves to amend its Complaint.

**I.      Defendants' Motion to Dismiss Defendants Kusic and NRA From the Breach of the License Agreement Claim**

Defendants argue that Kusic and NRA should be dismissed from the breach of License Agreement claim because neither is a party to the License Agreement between ARS and AA. Defendants claim that Kusic cannot be held personally liable simply as an officer of NRA and NRA cannot be held liable simply as the parent entity of AA. The general rule in Utah is that officers, shareholders, and directors are not held personally liable for judgments against the corporation. U.C.A. 1953 § 48-2c-601; *see also Salt Lake City Corp. v. Big Ditch Irrigation Co.*, 258 P.3d 539, 545 (Utah 2011). This same rule is generally accepted to apply to limited liability companies, *see Ditty v. Checkrite, Ltd., Inc.*, 973 F. Supp. 1320, 1335 (D. Utah 1997).[1] Similarly, a parent corporation is not generally liable for the wrongful acts or contractual obligations of a

---

[1] Pennsylvania law is generally consistent with Utah law. 15 Pa.C.S.A. § 8922; *see also Donahue v. Custom Management Corp.*, 634 F. Supp. 1190, 1200 (W.D. Pa. 1986).

subsidiary simply because the parent wholly owns the subsidiary. *See, e.g., Salt Lake Tribune Publishing Co., LLC v. AT&T Corp.*, 2002 U.S. Dist. LEXIS 27804, 37-41 (D. Utah March 27 2002). Therefore, in order to find Kusic or NRA liable for AA's alleged breach, ARS must be able to pierce the corporate veil.

Specifically, Defendants assert that ARS fails to plead sufficient facts to establish the Utah Supreme Court's eight factors to be considered in determining whether to pierce the corporate veil, *see Jones & Trevor Mktg. v. Lowry*, 284 P.3d 630, 636 (Utah 2012), and consequently ARS's claims against Kusic and NRA should fail as a matter of law. However, as a procedural matter, the motion before the *Jones & Trevor* court was one of summary judgment. The court in that case explicitly stated that there is not a specific number of factors that must be met to avoid summary judgment, but rather the factors are merely guidelines used in determining whether the facts show an alter ego exists. *Jones & Trevor,* 284 P.3d at 637-38. In contrast, the current case is before this court on a motion to dismiss and is therefore better compared to *DeMarco v. Lapay*, 2012 U.S. Dist. LEXIS 117462 (D. Ut. Aug. 20, 2012). The standard for avoiding dismissal is necessarily lower since parties have not had a chance to conduct discovery.

In *DeMarco*, the District Court applied the Utah Supreme Court's two prong test to determine if a complaint was sufficient to pierce the corporate veil theory:

> (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.

2012 U.S. Dist. LEXIS 117462 at 33-34 (citing *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979)).

Under the first prong, ARS has alleged in the Amended Complaint that Kusic held himself out as the owner of AA despite NRA being the true owner of AA. In the Letter of Intent regarding negotiations to sell AA to ARS, Kusic represented himself as owner of AA and that he purchased the company in May 2011. Amended Complaint ¶ 25. Furthermore, ARS alleges that Kusic held himself out as owner of AA in e-mail correspondences to third parties, citing four specific e-mails in 2012 and 2013. *Id.* at ¶¶ 26-29. ARS also alleges that Kusic has diverted potential business of AA to NRA for his own personal gain citing an e-mail dated June, 5, 2012 where Kusic asked, "How do I get NRA as the agency instead of AA?" *Id.* at ¶ 30. Lastly, ARS asserts that Kusic, in connection with the alleged sale of AA, admitted to failing to maintain proper business and accounting records. *Id.* at ¶ 34. The court presumes these alleged facts in the Amended Complaint to be true and concludes they are sufficient at this point in the litigation to plausibly demonstrate that an alter ego may exist between Kusic, NRA, and AA.

Under the second prong of sanctioning a fraud, promoting injustice or an inequitable result, ARS has alleged that Kusic failed to maintain proper business and/or accounting records for AA. Consequently, AA's true financial status is unknown. If ARS's claims are valid, premature dismissal of the responsible party or parties could promote an inequitable result. At this point in the litigation, absent discovery, the court concludes that the Amended Complaint sufficiently meets *DeMarco*'s second prong.

Accordingly, the court denies Defendants' Motion to Dismiss Kusic and NRA from the breach of the license agreement claim.

## II. Defendants' Motion to Dismiss the Breach of Contract to Sell

Defendants argue that no enforceable contract ever existed to sell AA and that ARS's breach of sales contract claim should be dismissed. Defendants specifically argue that it is implausible that the two parties would enter a binding oral contract worth $1.46 million without more details and formality. Both parties agree that the negotiations were ongoing and Defendants argue that this shows no binding contract had been entered and the claim should be dismissed.

When making a complaint, the "plaintiff must only give the defendant fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved." *Canfield v. Layton City,* 122 P.3d 622, 625 (Utah 2005). The elements of a breach of contract claim are "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L.C.,* 20 P.3d 388, 392 (Utah 2001). "Thus, to have stated a claim for breach of contract, [plaintiff] must have alleged sufficient facts, which we view as true, to satisfy each element." *MBNA America Bank, N.A. v. Goodman*, 140 P.3d 589, 591 (Utah App. 2006).

ARS's Amended Complaint alleges that Kusic made an offer to sell AA for $1.46 million with a payment plan of $200,000 down and 6% financing, ARS accepted the terms, and the two parties formed a contract. Amended Complaint ¶ 58-59. ARS further asserts that it participated in negotiations and began to secure financing for the sale. *Id.* at ¶¶ 38-39. Kusic, as the owner of AA, changed material terms to the proposed sale by refusing to go through with the sale unless he was paid $6 million, resulting in ARS suffering damages in lost profits, costs in preparing for the sale, and costs of attorney fees. *Id.* at ¶¶ 34, 60-62.

While ARS will need to prove with greater specificity that a valid contract existed to survive summary judgment or prevail at trial, the Amended Complaint alleges facts showing that all four of the *Bair* elements are present. 20 P.3d at 392. ARS's allegations, therefore, provide a sufficient basis to notify Defendants of the nature and basis for its claim for breach of contract to sell.[2]

Defendants' Motion to Dismiss ARS's breach of sales contract claim is denied.

### III.    Defendants' Motion to Dismiss the Unjust Enrichment Claim

Defendants move to dismiss ARS's unjust enrichment claim, arguing that it is redundant to the breach of License Agreement claim. As pleaded in the Amended Complaint, ARS or its agents recruited independent licensees to AA and assisted in managing independent licensees within AA, which independent licensees brought business and profits to AA. Amended Complaint, ¶ 15. Sections 2.2 and 4.5 of the License Agreement, allowed, but did not require, ARS to recruit these independent licensees to AA. *Id.* ARS claims that the efforts of ARS conferred a benefit on AA that was outside of the obligations of the License Agreement because it was not required by the License Agreement and that unjust enrichment is a proper claim for relief.

Unjust enrichment is a remedy found in quantum meruit and "where an express contract covering the subject matter of the litigation exists, recovery for unjust enrichment is not available." *U.S. Fidelity v. U.S. Sports Specialty*, 270 P.3d 464, 468-69 (Utah 2012). While sections 2.2 and 4.5 of the License Agreement only allow and do not require ARS to

---

[2] While Defendants did not raise this argument in their briefs, they did make the argument at the October 3, 2013 hearing that the alleged contract to sell violated the statute of frauds because it could not be completed within one year. Under the terms of the contract as alleged in the Amended Complaint, the court finds that there were no set time limits as to when the contract would be completed and consequently it is possible that it could be completed within a year.

independently recruit licensees, the License Agreement does in fact outline when and how much AA should compensate ARS when license fees are collected. Consequently, a claim for unjust enrichment is inapplicable against AA because the License Agreement is an express contract that covers the subject matter at issue.

Kusic and NRA, however, are not parties to the License Agreement and, subsequently, they may be liable for any benefit bestowed upon them by ARS. ARS claims that Kusic diverted business from AA to NRA to the detriment of ARS. Specifically, ARS incorporates its earlier allegations that Kusic sent an e-mail to Danico on June 5, 2012 asking how he could "get NRA as the agency instead of AA." Amended Complaint ¶ 30. Any benefit received by Kusic or NRA in this way would not be covered under the License Agreement and, therefore, ARS has a plausible claim for unjust enrichment against Kusic and NRA.

Accordingly, Defendants' Motion to Dismiss ARS's unjust enrichment claim is granted against AA and denied against Kusic and NRA.

## IV.    Defendants' Motion to Dismiss the Conversion Claim

Defendants move to dismiss ARS's conversion claim, arguing that it is barred by the economic loss doctrine. The tort of conversion is barred by the economic loss doctrine "where the exact same conduct is described in both contract and tort claims." *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 14 (Utah 2003) (concluding that all of plaintiffs' tort claims, including conversion, were barred by the economic loss doctrine "where the exact same conduct is described in both contract and tort claims"). In its Amended Complaint, ARS claims that AA's retention of the $150,000 is both a violation of the License Agreement as well as a tort of conversion. *See* Amended Complaint ¶¶ 51, 78. Both claims rely on the exact same set of

circumstances and alleged facts and, therefore, the tort of conversion is barred by the economic loss doctrine as against the signatory to the License Agreement, AA.

Kusic and NRA, however, are not parties to the License Agreement. Therefore, the conversion claim, as asserted against them, is not barred by the economic loss doctrine. At this point prior to discovery, it is unclear who specifically has exercised dominion and control over the $150,000 in question. Accordingly, Kusic and NRA may be potentially liable under a claim for conversion.

Defendants' motion to dismiss ARS's conversion claim is granted against AA and denied against Kusic and NRA.

### V. Defendants' Motion to Dismiss the Claim of Breach of the Covenant of Good Faith and Fair Dealing

ARS alleges that Defendants breached the covenant of good faith and fair dealing by siphoning potential clients of AA to NRA and thereby depriving ARS of potential commissions. However, where the allegations made in support of the breach of good faith claim are based on the express terms of the contract, "courts must rely solely on the contract itself and cannot entertain claims based on an implied duty to perform in good faith." *Freedom Med., Inc. v. Royal Bank of Canada*, 2005 U.S. Dist. LEXIS 37836, 11 (E.D. Pa. Dec. 30, 2005). AA's failure to pay for services rendered by ARS is covered expressly in the License Agreement and, therefore, covered by ARS's claim for a breach of the License Agreement. Consequently, with respect to the claim against AA, the court can only look to the contract and not at an implied duty to perform. Additionally, unlike the tort claim of conversion, a breach of covenant of good faith and fair dealing claim only applies between parties to a contract. Because neither Kusic nor NRA is a

party to the License Agreement, AA cannot bring a claim for breach of the covenant against them.[3]

Therefore, the court grants Defendants' motion to dismiss ARS's breach of the covenant of good faith and fair dealing claim.

### VI.     Defendants' Motion to Dismiss All Claims for Consequential and Other Damages

Defendants argue that ARS is barred from pursuing consequential damages from AA because the License Agreement expressly provides that there is "no liability for consequential damages" and that "neither party shall be liable to the other party for consequential damages of any kind" License Agreement, §5.13.

However, the Amended Complaint states that ARS seeks relief for "damages for breach of *the agreement to sell* AA to ARS and/or its principals, including, but not limited to, all consequential damages and lost profits." Amended Complaint, pg. 15 (emphasis added). Because the Amended Complaint expressly states that consequential damages are sought specifically for the alleged breach of contract for the sale of AA, the License Agreement does not govern this issue. The License Agreement and alleged contract for the sale of AA are two independent contracts. Therefore, the court denies Defendants' motion to dismiss all claims for consequential damages.

---

[3] The only potential claim against a non-party to the contract for conduct of the kind alleged against Kusic and NRA would be the tort of intentional interference with contractual relations. *See Wendover City v. W. Wendover City,* 404 F. Supp. 2d 1324, 1333 (D. Utah 2005).

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is hereby DENIED IN PART and GRANTED IN PART and Plaintiff's Motion for Leave to Amend the Complaint is hereby GRANTED.

DATED this 7th day of November, 2013.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge