STEVEN R. SUMSION (#8317)
KEVIN R. WORTHY (#13900)
JASON ZUNDEL (#15293)
SUMSION BUSINESS LAW, LLC
3651 North 100 East, Suite 300
Provo, UT 84604
Telephone: (801) 375-2830
Email: steve@businesslawutah.com
kevin@businesslawutah.com
jason@businesslawutah.com

RICHARD D. SALGADO
*Admitted Pro Hac Vice*
ADAM H. PIERSON
*Admitted Pro Hac Vice*
DENTONS US LLP
2000 McKinney Ave., Suite 1900
Dallas, Texas 75201
Telephone: (214) 259-0935
Email: richard.salgado@dentons.com
adam.pierson@dentons.com

*Attorneys for Advanced Recovery Systems, LLC, et al.*

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| **ADVANCED RECOVERY SYSTEMS, LLC**, a Utah limited liability company<br><br>Plaintiff,<br><br>v.<br><br>**AMERICAN AGENCIES, LLC**, a Pennsylvania limited liability company, et al.<br><br>Defendants. | **DEFENDANTS' PROPOSED JURY INSTRUCTIONS**<br><br>Case No. 2:13-cv-00283-DAK-BCW<br>Judge Dale A. Kimball<br>Magistrate Judge Brooke C. Wells |

Defendants Advanced Recovery Systems, LLC, Kinum, Inc., Scott Mitchell, Blake Reynolds, and Brent Sloan ("Defendants"), by and through their counsel of record, hereby submit the following Proposed Jury Instructions:

**DEFENDANTS' PROPOSED INSTRUCTION NO. 1**

**NATURE OF THE CASE**

In this lawsuit, a business relationship ended between Plaintiff American Agencies, LLC ("AA") and Defendants Advanced Recovery Systems, LLC ("ARS"), Scott Mitchell ("Mitchell"), and Blake Reynolds ("Reynolds"). Some of AA's claims have already been decided. In this trial, it will be your responsibility to consider the issues remaining.

ARS was a Utah startup that offered software to automate the collection of debts for businesses. AA is a debt collection agency that wanted to use the ARS software for its business. ARS gave AA a license to use the software, and AA granted ARS the rights to help create a national sales system for AA. The relationship between ARS and AA lasted for approximately one and a half years.  Thereafter, ARS transferred its assets, including the software, to Kinum, Inc. ("Kinum") in exchange for stock in the company, and Brent Sloan ("Sloan") was made CEO of the company. Kinum then transferred the software assets to Sajax Software, LLC ("Sajax"), who is no longer a party to this dispute.  ARS, Kinum, Sloan, Reynolds, and Mitchell may be collectively referred to as the "Defendants."

You should know that the court has already held ARS liable for breach of contract and awarded damages. The court also found ARS and Kinum liable for misappropriation of AA's trade secrets, without determining an amount of damages for such misappropriation.

The issues for you to determine are as follows: (a) damages to AA, if any, related to the trade secret misappropriation, (b) whether any of the Defendants tortiously interfered with AA's existing or potential contracts, (c) whether any of the Defendants were unjustly enriched, (d) whether any of the Defendants should be liable for copyright infringement, (e) whether ARS breached a duty of good faith and fair dealing, and (f) whether any of the Defendants participated

in a civil conspiracy. Should you find any of the Defendants liable for any of the claims described above, you will also need to determine what damages, if any, should be assessed. Details on how such findings are to be made are included later in these instructions.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 2

American Agencies had a duty to mitigate, that is, to minimize or avoid, the damages caused by any breach of the License Agreement. American Agencies may not recover damages that it could have avoided without undue risk, burden or humiliation. Likewise, American Agencies may not recover the damages for losses that were caused by or made worse by its own action or inaction.

American Agencies has a right to recover damages if it has made a reasonable but unsuccessful effort to avoid loss.

American Agencies had no obligation to mitigate its damages by taking action which the defendants refused to take. If any defendant had the primary responsibility to perform a particular act and had the same opportunity to perform the act and the same knowledge of the consequences as American Agencies, that defendant cannot succeed in a claim that American Agencies failed to perform the act.

**REFERENCE**:     *John Call Eng'g, Inc. v. Manti City Corp.*, 795 P.2d 678, 680-82 (Utah Ct. App. 1990); Model Utah Jury Instructions, Second Edition, CV2139

## DEFENDANTS' PROPOSED INSTRUCTION NO. 3

Plaintiff has a duty to exercise reasonable diligence and ordinary care to minimize the damages caused by the Defendants' fault. Any damages awarded to Plaintiff should not include those that Plaintiff could have avoided by taking reasonable steps. If Plaintiff made reasonable efforts to minimize its damages, then your award should include the amounts that it reasonably incurred to minimize them.

**REFERENCES:**     *Gibbs M. Smith, Inc. v. United States Fid. & Guar. Co.*, 949 P.2d 337 (Utah 1997); *Gill v. Timm*, 720 P.2d 1352 (Utah 1986); Model Utah Jury Instructions, Second Edition, CV2020 (modified)

**DEFENDANTS' PROPOSED INSTRUCTION NO. 4**

**CAUSE**

As used in the law, the word "cause" has a special meaning, and you must use this meaning whenever you apply the word. "Cause" means that:

(1) the person's act or failure to act produced the harm directly or set in motion events that produced the harm in a natural and continuous sequence;

and

(2) the person's act or failure to act could be foreseen by a reasonable person to produce a harm of the same general nature.

There may be more than one cause of the same harm.

**REFERENCES:**      *Nebeker v. Summit Cnty.*, 2014 UT App 137, ¶¶ 41-43, --- P.3d --- (foreseeability element); *Raab v. Utah Railway Company*, 2009 UT 61, 221 P3d 219; *Steffensen v. Smith's Management Corp.*, 862 P.2d 1342 (Utah 1993); *Proctor v. Costco Wholesale Corp.*, 2013 UT App 226, ¶¶ 9-17, ---P.3d--(foreseeability element); *McCorvey v UDOT*, 868 P.2d 41, 45 (Utah 1993); *Mitchell v. Pearson Enterprises*, 697 P2d 240 (Utah 1985); *Rees v. Albertson's, Inc.*, 587 P.2d 130 (Utah 1978); *Holmstrom v. C.R. England, Inc.*, 2000 UT App 239, 8 P3d 281; Model Utah Jury Instructions, Second Edition**,** CV209

## DEFENDANTS' PROPOSED INSTRUCTION NO. 5

## LIMITATION OF LIABILITY FOR CONSEQUENTIAL DAMAGES

The License Agreement in this case states expressly that "NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR CONSEQUENTIAL DAMAGES OF ANY KIND (INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, OR LOSS OF BUSINESS INFORMATION) REGARDLESS OF WHETHER THE PARTY LIABLE OR ALLEGEDLY LIABLE WAS ADVISED, HAD REASON TO KNOW, OR IN FACT KNEW OF THE POSSIBILITY THEREOF." You are not permitted, therefore, to award any damages to Plaintiff for any consequential damages relating to any breach of the License Agreement.

Consequential damages are those losses or injuries reasonably within the contemplation of the parties, that is, they could have considered them or reasonably foreseen them, at the time the contract was made.

In order to decide whether a loss or an injury was foreseeable at the time the contract was made, you should examine the nature and language of the contract and the reasonable expectations of the parties. A loss may be foreseeable because it follows from the breach

(1) in the ordinary course of events, or

(2) as a result of special circumstances, beyond the ordinary course of events, that the Defendants had reason to know.

**REFERENCES:** *McCleve Properties v. Hult Family*, 2013 UT App 185 (direct and consequential damages distinguished); *Mahan v. UNUM Life Ins. Co. of Am.*, 2005 UT 37, ¶ 17, 116 P.3d 342, 346; *Black v. Allstate Ins. Co.*, 2004 UT 66, ¶ 28, 100 P.3d 1163, 1170; *Berube v.*

*Fashion Centre*, 771 P.2d 1033, 1050 (Utah 1989); *Gardiner v. York*, 2006 UT App 496, ¶ 14,

153 P.3d 791, 795; Restatement (Second) of Contracts § 351 (1981); Model Utah Jury

Instructions, First Edition, 26.51

## DEFENDANTS' PROPOSED INSTRUCTION NO. 6

## PERSONAL LIABILITY INSTRUCTION

Generally, a corporation is an entity separate and distinct from its officers and directors, and the officers and directors are not held personally liable for the corporation's debts, obligations, or judgments entered against the corporation.

An individual is not personally liable for the wrongful conduct of a corporation just because that individual is an officer or director of that corporation.

If you find that Scott Mitchell, Blake Reynolds, or Brent Sloan was an officer or director of a corporation at the time of the conduct at issue here, and was acting within the scope of his official capacities during the corporate acts complained of, then he is not personally liable to AA. This is so even though the corporation itself may be liable to AA and even though Scott Mitchell, Blake Reynolds, or Brent Sloan may have had a minor role in the corporate conduct.

As officers of ARS, Scott Mitchell and Blake Reynolds are not personally liable to AA unless AA proves, by a preponderance of the evidence, that Scott Mitchell and Blake Reynolds acted in a way that satisfies each element of the claims alleged by AA.  The same is true of the officers of Kinum.


**REFERENCES:**     ABA Model Jury Instruction 1.3.4.f—Nonliability of Corporate Officers, Directors, and Employees; *Armed Forces Ins. Exchange v. Harrison*, 70 P.3d 35, 40, 2003 UT 14, ¶ 14 (Utah 2003).

## DEFENDANTS' PROPOSED INSTRUCTION NO. 7

## COPYRIGHT ACT INSTRUCTION

"Copyright" is the name for the protection that the law extends to a creator of an original work against the unauthorized appropriation of that work by others.  Copyright protection extends only to the expression of the ideas in the creator's work, but never to the ideas themselves.  The copyright law attempts to strike a balance between protecting so much of the creator's original work as embodies the creator's own particular form of expression, but not so much as would prevent others from using the same ideas, themes, and subjects in their own forms of expression.

The owner of a copyright generally has the right to exclude any other person from distributing or using the work covered by copyright for a specific period of time. One who distributes a copyrighted work during the term of the copyright, infringes the copyright, unless licensed by the copyright owner.  In this case, AA claims it is the owner of a copyright.  AA seeks damages from Defendants for copyright infringement.  Defendants deny infringing the copyright and contend that the copyright is invalid.

In order to prevail on AA's copyright infringement claim, AA must prove two things:

First: AA is the owner of a work protected by the Copyright Act.

Second: A Defendant infringed one or more of the rights granted by that Act.

The burden of proof lies with AA. You must find AA has proved these elements by a preponderance of the evidence before you may find for AA in this action.  Each of these aspects has several elements that I will explain to you.

The first thing AA must prove is that AA is the owner of a work protected by the Copyright Act. In order to prove this, AA must show the following elements:

First: AA's work is original;

Second: AA is the creator; and

Third: AA has complied with the formalities of the copyright law.

Under the copyright law, originality means that the work was independently created by the creator and not copied from other works. AA must show it has made a substantial original contribution or a substantial original variation distinguishable from prior works.

To comply with the formalities required by the copyright law, AA was required to place a notice of copyright on all authorized publicly distributed copies of the work.  A proper notice includes:

First: the letter C in a circle, or the word "copyright," or a proper abbreviation like "copr.;"

Second: the year of first publication; and

Third: the name of the copyright owner.

A proper notice must be affixed to the copies so as to give reasonable notice of the owner's contention that this is a copyrighted work. Without such notice, AA is precluded from receiving statutory damages or attorney fees.

The second thing AA must prove is that a defendant infringed AA's rights granted by the Copyright Act.  AA must prove that a defendant had access to AA's work, and that a defendant's work was copied or taken from AA's work.  No matter how similar the two works are, AA may not recover against a defendant unless that similarity is the result of the copying or taking of AA's work. Furthermore, if a defendant copies or takes only those portions of AA's work which were not original with AA, that is, portions Plaintiff had in turn copied or taken from somebody else, then that defendant is not liable for copyright infringement.

If you find AA had a valid copyright and you find the copyright was infringed by a defendant, you must then decide on the amount of damages AA is entitled to recover.

The law allows AA to recover the actual damages suffered by AA as a result of the infringement, including unrecovered costs and lost profits, and also any profits of a defendant attributable to the infringement that you have not already taken into account or properly covered in figuring AA's

lost profits.  A defendant's profits consist of the amount of money a defendant has made only due to the infringement, after deducting the defendant's expenses in producing and marketing the infringing work.

**REFERENCES:**      3B Fed. Jury Prac. & Instr. § 160:1 (6th ed.), 3B Fed. Jury Prac. & Instr. § 160:1, 10, 20, 21, 23, 25, 26, 27, 89 (6th ed.); 17 U.S.C. § 412

## DEFENDANTS' PROPOSED INSTRUCTION NO. 8

## ACTUAL DAMAGES FOR COPYRIGHT INFRINGMENT

If Defendants are found liable for Copyright Infringement, AA is entitled to recover the actual damages suffered as a result of the infringement.  Actual damages means the amount of money adequate to compensate AA for the reduction of the fair market value of the copyrighted work caused by the infringement.  The reduction of the fair market value of the copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the Defendants of AA's works.  That amount also could be represented by the lost license fees AA would have received for the Defendants' unauthorized use of AA's work.


**REFERENCES:**      17 U.S.C. §§ 504b; *Wood v. Houghton Mifflin Harcourt Pub. Co.*, 589 F. Supp. 2d 1230, 1244-45 (D. Colo. 2008); Ninth Circuit Manual of Model Jury Instructions, Instruction 17.23 (Civil)

## DEFENDANTS' PROPOSED INSTRUCTION NO. 9

## COPYRIGHT DAMAGES – DEFENDANTS PROFITS

In addition to damages, AA also is entitled to the Defendants' profits that are attributable to the infringement. You may not include in an award of profits any amount that you took into account in determining actual damages. If the Defendants' profits have been accounted for in the award of actual damages, to avoid double recovery, a separate award of the Defendants' profits should not be made.  You must decide for each defendant how much profit came from use of the copyrighted work because one defendant is not liable for the profit made by another.

You may make an award of the Defendants' profits only if you find that AA showed a causal nexus between the infringement and the profits generated directly or indirectly from the infringement.

The Defendants' profit is determined by subtracting all expenses from the Defendants' gross revenue.

The Defendants' gross revenue is all of the Defendants' receipts from the use of the work associated with the infringement. AA has the burden of proving the Defendants' gross revenue by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, and production costs incurred in producing the Defendants' gross revenue.  The Defendants have the burden of proving the Defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the use of a work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement.  The Defendants have the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

14

**REFERENCES:**     17 U.S.C. § 504(b); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985); *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003); *On Davis v. The Gap, Inc.*, 246 F.3d 152, 159-60 (2d Cir. 2001); *Hamil Am., Inc. v. GFI,* 193 F.3d 92, 104-05 (2d Cir. 1999); *cert. denied*, 528 U.S. 1160 (2000); Ninth Circuit Manual of Model Jury Instructions, Instruction 17.24 (Civil) (modified)

## DEFENDANTS' PROPOSED INSTRUCTION NO. 10

## TRADE SECRETS ACT INSTRUCTION

To recover on the trade secret claims AA has made in this case against Scott Mitchell, Blake Reynolds, and Brent Sloan, AA must prove each of the following four elements by a preponderance of the evidence:

1. That AA possessed a trade secret;

2. That a defendant acquired the trade secret (a) by using improper means, (b) through a confidential relationship with AA, or (c) under other circumstances giving rise to a duty not to use or disclose the trade secret without AA's permission;

3. If acquisition was not through improper means, that a defendant used or disclosed the trade secret without AA's permission; and

4. That (a) AA suffered harm as a direct and proximate result of a defendant's use or disclosure of AA's trade secret, or (b) a defendant obtained benefit from such use or disclosure.

I will go over each of these elements more specifically in the following instructions.  If after you consider all of the evidence you find that AA has proven each of these elements in accordance with the legal requirements as I describe them to you, then your verdict must be for AA and you will consider the amount of monetary damages to be awarded to AA, by following the instructions that I will give you relating to damages.

If, on the other hand, you find that AA has not proven one or more of these elements, then your verdict must be for the defendant.

Before you consider any defendant's actions, you must find that AA possessed a trade secret. To prove that particular information is entitled to special protection as a "trade secret," AA must show:

1. That the information at issue is indeed secret;

2. That AA has taken reasonable measures to protect the secrecy of the information; and

16

3. That the information is sufficiently valuable to confer a competitive advantage on AA over its business rivals.

To determine that a trade secret exists, you must first decide whether the information was indeed secret when a defendant's allegedly wrongful conduct occurred. Matters that are generally known to the public at large or to people in a trade or business are not trade secrets. Nor can information be considered a trade secret if it would be ascertainable with reasonable ease from publicly available information. In addition, a trade secret must possess enough originality so that it can be distinguished from everyday knowledge.

AA must demonstrate that the information was known only to it or to a few others who have also treated the information as a trade secret.  AA must also prove that it took reasonable measures to protect the secrecy of its trade secret.

A trade secret must be valuable either to AA or to its business rivals in the sense that, as long as it is secret, the information provides AA with an actual or potential competitive business advantage over its rivals. To help you determine whether AA enjoyed either an actual or potential competitive advantage, you may consider such things as:

1. The degree to which the information was generally known or readily ascertainable by others;

2. The extent to which AA used or uses the information in its business;

3. Whether the information allows AA to earn increased profits or operate its business more efficiently;

4. What gain or benefits a defendant's business obtained from the information;

5. What money, effort, and time AA expended to develop the information; and

6. The ease or difficulty of acquiring or duplicating the information through independent development, research of publicly available information, or taking apart and analyzing a product properly acquired to learn its secrets.

You must determine whether a defendant acquired the information through a confidential relationship with AA.  To determine whether the trade secret was disclosed to a defendant through a confidential relationship, you may consider whether, based on the dealings between the parties, a defendant knew or should have known that AA expected the information to be kept secret and whether AA's expectation was reasonable.  At times an agreement about confidentiality will be express, as when there is a written agreement between the parties specifying that defendants will not disclose or use the information unless authorized to do so.  At other times an agreement about confidentiality will be implicit in the circumstances of the parties' dealings. You may find a confidential relationship existed between the parties based either on an express agreement between the parties or one implied from the circumstances of their dealings.

The Court has found that ARS and Kinum are liable to AA for violations of the Utah Trade Secrets Act.  You must decide whether AA is entitled to any monetary damages in this case from ARS and/or Kinum.

If you find that any other defendant is individually liable to AA for his conduct, then you should also consider whether AA has suffered monetary damages as a result. As with issues of liability, AA has the burden to prove to you that it has suffered harm due to the wrongful conduct of a defendant. You may look at damages from multiple perspectives: (1) actual loss to AA or (2) benefits gained by a defendant.

AA claims that it has suffered actual monetary loss from misuse of its trade secrets. This actual loss can include both out-of-pocket expenses and lost profits. In measuring AA's damages, you may also consider what benefit a defendant has gained from misuse of AA's trade secrets. If you find that a defendant benefited from using a trade secret belonging to AA, then you may award the monetary value that you attribute to those benefits as the measure of AA's damage.  You

must decide for each defendant how much benefit came from use of the trade secret belonging to AA because one defendant is not liable for the benefits received by another.

It may be that only one of these measures of damages (i.e., AA's losses or a defendant's benefit) is necessary to fully compensate AA. However, you are also entitled to combine both AA's losses and a defendant's gains in determining the measure of damages to award plaintiff, so long as the damages do not overlap.  That is, it may be that a defendant profited from particular sales that AA would have made had the defendant not competed using the trade secrets. In that situation, the two ways of approaching damages that I have just described would measure the identical damages-- whether viewed as AA's loss or a defendant's gain. The law does not permit AA to recover twice for the same damages. Thus, you may include as damages both AA's lost profits and a defendant's gain only if and to the extent that they do not overlap in this way. In other words, if you were to include lost sales in calculating AA's losses because a defendant made the sales, then the value of those sales should be excluded from any calculation of a defendant's gains.  AA would be entitled to damages only for as long as you find that AA's trade secret is protected.

**REFERENCES:**      ABA Model Jury Instructions—Misappropriation of Trade Secrets, 8.1.0-8.6.4

## DEFENDANTS' PROPOSED INSTRUCTION NO. 11

## TRADE SECRET - DEFENITION OF USE AND DISCLOSURE

You must keep separate the ARS software and AA trade secrets.  AA's Trade Secrets have been defined as the confidential client information, lists, and prices that were housed in the ARS Software.  In order to find that AA disclosed the Trade Secrets to Blake Reynolds, Scott Mitchell and Brent Sloan, you must find that they each had access to the Trade Secret Information.  In addition, in order to find that Blake Reynolds, Scott Mitchell or Brent Sloan used the Trade Secret you must find that they used the data commercially or otherwise profited from it.

**REFERENCES:**            *Gen. Universal Sys., Inc. v. Hall, Inc*., 500 F.3d 444, 450 (5th Cir 2007); *InnoSys, Inc. v. Mercer*, 2015 UT 80, ¶ 30, 364 P.3d 1013, 1019, *reh'g denied* (Jan. 7, 2016); *MedSpring Group, Inc. v. Feng*, 368 F. Supp., 1270 (D. Utah 2005); *ATS Products, Inc. v. Champion Fiberglass, Inc*., 2013 WL 6086924 (N.D. Cal. 2013); *Utah Med. Prod., Inc. v. Clinical Innovations Assocs., Inc.*, 79 F. Supp. 2d 1290, 1312 (D. Utah 1999), aff'd, 251 F.3d 171 (Fed. Cir. 2000)

## DEFENDANTS' PROPOSED INSTRUCTION NO. 12

## UNJUST ENRICHMENT

AA claims that the Defendants have been unjustly enriched.

Because one defendant cannot be held liable for any unjust enrichment of another defendant, in order to find that any defendant has been unjustly enriched, you must first find that all of the following elements are true for that defendant individually:

1. The defendant must have received a benefit at the expense of AA;

2. The defendant knew of the benefit; and

3. The defendant accepted or retained the benefit, so that it would be unjust to allow the defendant to retain the benefit without paying for its value.

4. If you find that another legal remedy is available, such as an award of damages for the breach of an express contract, then you cannot find that there was any unjust enrichment.

5. If the subject matter of the claim was expressly covered in a contract between AA and a defendant, then you cannot find that there was any unjust enrichment.

6. If the subject matter of the claim relates directly to Copyright infringement or Trade Secret misappropriation you cannot find that there was any unjust enrichment.

**References:**   *American Towers Owners Ass'n v. CCI Mechanical*, 930 P.2d 1182, 1192 (Utah 1996) (quoting *Concrete Prods Co. v. Salt Lake County*, 734 P.2d 910, 911 (Utah 1987)).

*Mann v. American Western Life Ins. Co.,* 586 P.2d 461, 465 (Utah 1978) ("Recovery in quasi contract is not available where there is an express contract covering the subject matter of the litigation.").  17 U.S.C. §§ 102 and 103; *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133,

1147 (10th Cir.2009) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985)); *CDC*

*Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 48, 274 P.3d 317.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 13

## CIVIL CONSPIRACY

AA alleges a claim of civil conspiracy against the Defendants. AA claims that the Defendants participated in a civil conspiracy by unlawfully interfering with AA's contractual rights, interfering with AA's prospective business relations, and being unjustly enriched.

A claim for civil conspiracy is by itself not actionable and you may not award damages for it unless AA also proves the underlying claim on which the alleged conspiracy was based, which underlying claim cannot be Copyright infringement or Trade Secret misappropriation.

To prove its claim for civil conspiracy, AA must prove by clear and convincing evidence:

>
> (1) that the defendant was involved with at least one other person involved in the underlying claim;
>
> (2) that the defendant and other person or people shared an object to be accomplished;
>
> (3) that there was a meeting of the minds between them on the object or course of action;
>
> (4) that at least one of them engaged in one or more unlawful, acts;
>
> (5) and that it caused damage to AA.

**REFERENCES:**     *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944; *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987); *Puttuck v. Gendron*, 199 P.3d 971 (Utah Ct. App. 2008); Maxey *v. Banks*, Fed. Appx. 805 (10th Cir. 2001); *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v PepsiCo, Inc.*, 431 F.3d 1241 (10th Cir. 2005); *Coll v. First American Title Ins. Co.*, 642 F.3d 876 (10th Cir. 2011); 17 U.S.C. §§ 102 and 103; *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1147 (10th Cir.2009) (quoting *Ehat v. Tanner*, 780

F.2d 876, 878 (10th Cir.1985)); *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 48, 274 P.3d 317.

## DEFENDANTS' PROPOSED INSTRUCTION NO. 14

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

All contracts contain an unwritten or implied promise that the parties will deal with each other fairly and in good faith. This means that AA and ARS promised not to intentionally do anything to injure each other's rights to receive the benefits of the contract. To decide if ARS violated this unwritten promise, you should consider whether ARS' actions were consistent with the agreed common purpose and justified expectations of AA in light of the contract language and the dealings between and conduct of the parties.

There are some limits to this unwritten promise that you need to keep in mind. First, this unwritten promise between the parties to deal fairly with each other and in good faith does not establish new, independent rights or duties that are inconsistent with the actual terms of the contract. Second, this unwritten promise does not create rights and duties that are inconsistent with the actual terms of the contract. Third, this unwritten promise does not require either party to use a contract right in a way that will be harmful to themselves simply to benefit the other party. Fourth, even a breach in the express terms of a contract does not necessarily mean that the implied promise of good faith and fair dealing was broken. Finally, you cannot use this unwritten promise to achieve an outcome that you believe is fair but is inconsistent with the actual terms of the contract.

If you find that ARS violated this unwritten promise to deal fairly and in good faith, that would be a breach of the contract.

**REFERENCES:**    *Young Living Essential Oils, LC, v. Marin*, 2011 UT 64; *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991); *Oakwood Village, LLC v.*

*Albertsons, Inc.*, 2004 UT 101, ¶ 45, 104 P.3d 1226, 1240; Model Utah Jury Instructions, Second

Edition, CV2119

## DEFENDANTS' PROPOSED INSTRUCTION NO. 15

### INTERFERENCE WITH CONTRACT: ELEMENTS OF LIABILITY

The Court has previously determined that AA was a party to a valid contract (i.e., the License Agreement) with ARS. For AA to recover against any Defendant for interference with that contract, AA must prove, by a preponderance of the evidence, each of three things in relation to that particular Defendant:

1. That the defendant intentionally interfered with AA's contract with ARS;

2. That the acts of the defendant in inducing ARS to breach the contract with AA were done through improper means; **and**

3. That the defendant's conduct directly caused damage to AA.

If you find from your consideration of all of the evidence that AA has proved each of these elements by a preponderance of the evidence, then you may find in favor of the AA on the question of liability.

**REFERENCES**:   *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553; *Walker v. Anderson-Oliver Title Ins. Agency, Inc.*, 309 P.3d 267, 273 (Utah App. 2013); *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323, 331; Restatement (Second) of Torts § 766 (1977)

## DEFENDANTS' PROPOSED INSTRUCTION NO. 16

## DEFENITION OF IMPROPER MEANS

The element of "improper means" is satisfied when the means used to interfere with AA's economic relations are contrary to law, such as violations of statutes, regulations, or recognized common law rules. Improper means include violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood. Neither a deliberate breach of contract nor industry competition are sufficient to meet the standard of improper means.

**REFERENCES:**            *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553; *Keith v. Mountain Resorts Dev., L.L.C.*, 2014 UT 32, ¶ 46, 337 P.3d 213, 227; *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 20, 116 P.3d 323, 331; *Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 18, 192 P.3d 858; *ClearOne Commun., Inc. v. Chiang*, 2:07-CV-37 TC, 2008 WL 3925219, at *3 (D. Utah Aug. 20, 2008) (unpublished); Restatement (Second) of Torts § 766 (1977)

## DEFENDANTS' PROPOSED INSTRUCTION NO. 17

## PREEMPTION OF TRADE SECRET AND COPYRIGHT INFRINGMENT CLAIMS

AA claims that the Defendants have been unjustly enriched, have tortuously interfered with existing and potential contracts, and have participated in civil conspiracy. You cannot find Defendants liable for any of those claims to the extent they rely directly on any actions or circumstances relating to Copyright infringement or Trade Secret misappropriation.  If only part of the claim relies on Copyright infringement or Trade Secret misappropriation, then the Defendants can be found liable only for those actions that are unrelated.

**REFERENCES:**          17 U.S.C. §§ 102 and 103; *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1147 (10th Cir.2009) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir.1985)); *CDC Restoration & Const., LC v. Tradesmen Contractors, LLC*, 2012 UT App 60, ¶ 48, 274 P.3d 317.

Dated: February 10, 2017                    Respectfully submitted,


                                            **SUMSION BUSINESS LAW, LLC**

                                            /s/ Jason Zundel
                                            Steven R. Sumsion
                                            Kevin R. Worthy
                                            Jason Zundel


                                            **DENTONS US LLP**

                                            /s/ Richard D. Salgado
                                            Richard D. Salgado
                                            Adam H. Pierson

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February 2017, a true and accurate copy of the foregoing document was served upon the following counsel by the Court's electronic CM/ECF notification system:

Robert O. Rice
Michael Erickson
Aaron K. Olsen
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Post Office Box 45385
Salt Lake City, UT 84145-0385
rrice@rqn.com
merickson@rqn.com
aolsen@rqn.com

/s/ Michael Soressi
**SUMSION BUSINESS LAW**