IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ADVANCED RECOVERY SYSTEMS, LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>AMERICAN AGENCIES, LLC, ET AL.,<br><br>　　　　Defendants,<br><br>AMERICAN AGENCIES, LLC,<br><br>　　　　Counterclaimant,<br><br>vs.<br><br>ADVANCED RECOVERY SYSTEMS, LLC, ET AL.,<br><br>　　　　Counterclaim Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13CV283DAK<br><br>Judge Dale A. Kimball |

　　　　This matter is before the court on Counterclaim Defendants' Motion to Dismiss Third Amended Complaint (Docket No. 278), Advanced Recovery System's Motion for Leave to File Second Amended Complaint  Motion for Leave to File Amended Counterclaim (Docket No. 302) and Counterclaim Defendants' Motion for Judgment on the Pleadings (Docket No. 315).  On February 13, 2017, the court held a hearing on the motions.  At the hearing, ARS and Counterclaim Defendants were represented by Richard D. Salgado and Steven R. Sumsion, and American Agencies, LLC ("AA") was represented by Robert O. Rice, Michael K. Erickson, and

Aaron K. Olsen. At the hearing, ARS agreed that its Motion to Amend was moot based on the court's summary judgment rulings. The court heard oral argument on the remaining motions and took them under advisement. The court has carefully considered the parties arguments as well as the law and facts relevant to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

American Agencies, LLC ("AA") entered an exclusive license agreement ("License Agreement") with Advanced Recovery Systems, LLC ("ARS"), to use certain debt collection software ("ARS Software"). As part of the exclusive license to the software, AA incorporated its client information and other related data into the ARS Software.

In March 2013, ARS forwarded $150,000 to AA, allegedly representing license fees that had not been paid. Because of interactions between the parties and questionable behavior, AA felt that ARS had not sufficiently explained its conduct with the independent licensees and the nature of the money. AA, therefore, held the $150,000 and asked ARS to provide further information. In retaining the disputed money, AA relied on Section 3.3 of the License Agreement, which provided that the parties were to resolve "[d]isputed, un-reconciled and/or questionable" license fee payments before remitting them to ARS.

On March 20, 2013, ARS provided AA written notice of material breach pursuant to the License Agreement, specifying AA's failure to pay ARS the $150,000 in license fees. AA CEO Steve Kusic acknowledged receipt of ARS's notice of breach. Paragraph 4.13.1 of the License Agreement provides that "if the default(s) have not been cured within thirty (30) days of the receipt of such written notice of default, the non-breaching party shall have the right to terminate

the Agreement and/or seek additional remedies."

On April 22, 2013, ARS filed the present lawsuit against AA for failure to pay or refund $150,000 to ARS. ARS also sought a declaratory judgment that the License Agreement was terminated. Two months later, in June 2013, ARS was sold to Kinum without AA's knowledge. The License Agreement, however, provided AA a right of first refusal to purchase ARS and the ARS Software. ARS did not allow AA to exercise its right of first refusal because ARS believed that AA had materially breached the contract by withholding the $150,000. Because ARS did not inform AA of its sale to Kinum, AA continued to pay the agreed upon $20,000 monthly fee for its and its clients' use of the ARS Software during that time.

On September 28, 2016, this court ruled on six motions of summary judgment, deciding that AA did not breach the License Agreement when it retained the disputed funds, ARS breached the License Agreement by failing to allow AA the right to exercise its right of first refusal, and ARS and Kinum were liable to AA for misappropriation of AA's trade secrets.

## DISCUSSION

Counterclaim Defendants' motions seek to have this court dismiss several of AA's counterclaims. The motion to dismiss was filed after the court held its hearing on the motions for summary judgment and was not fully briefed when the court issued its September 28, 2016 Memorandum Decision and Order. Counterclaim Defendants' Motion for Judgment on the Pleadings was not filed until approximately a month after the court issued its Memorandum Decision and Order.

As an initial matter, the court must address the lateness of the motions. Counterclaim Defendants filed the motion well over a year after the close of discovery, many months after the

dispositive motion deadline, and more than a month after the court had ruled on six motions for summary judgment. Counterclaim Defendants contend that they are justified in filing their late motion to dismiss and motion for judgment on the pleadings because this court allowed AA to amend its counterclaim while the numerous summary judgment motions were being briefed. While Counterclaim Defendants were technically within the time frame for filing a response to the amended counterclaim, their argument fails to acknowledge that the court allowed AA to amend its counterclaim in order to limit and clarify causes of action. The amendment did not expand the litigation in any way. Every argument asserted in Counterclaim Defendants' late-filed motions could have been raised months earlier in timely filed motions.

Moreover, Counterclaim Defendants never sought leave to file the motions even though the motions were obviously filed well past the dispositive motion deadline in the governing scheduling order. Counterclaim Defendants contend that their motion for judgment on the pleadings is timely because it did not delay trial. The motion, however, did in fact delay the trial by a month so that this court could hold a hearing and decide the motion prior to trial. Despite the amount of briefing on these motions, Counterclaim Defendants have never attempted to provide good cause for filing the motions so late. Although the court agrees with AA that the motions could be stricken solely for being untimely, the court will nonetheless consider the merits of the motions.

*I. Counterclaim Defendants' Motion to Dismiss*

Counterclaim Defendants ask the court to dismiss AA's counterclaim for unjust enrichment in its entirety and AA's counterclaims for interference with prospective business relations and conspiracy in part.

**A. Unjust Enrichment Claim**

First, Counterclaim Defendants argue that AA's claim for unjust enrichment does not plead sufficient factual matter to state a claim for relief. The court should not rely on "naked assertions devoid of further factual enhancement." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). Counterclaim Defendants contend that AA's unjust enrichment claim identifies the counterclaim defendants, alleges that they illegally obtained the ARS Software, and then recites the elements of the cause of action without explaining the nature of the benefit allegedly conferred, what business information was involved, and what circumstances allegedly make it inequitable for the Counterclaim Defendants to retain the alleged benefits.

AA addressed the *Twombly* argument in relation to prior motions and prior amendments to its counterclaims. AA's claim for unjust enrichment is based on Counterclaim Defendants obtaining the ARS Software, which housed AA's business information, in violation of AA's right of first refusal. Both the ARS Software and the business information in it had their own independent value. When Counterclaim Defendants obtained the ARS Software in violation of AA's right of first refusal, they obtained a valuable benefit under inequitable circumstances. Kinum's expert indicates that the ARS Software would have generated $1,621,806 in profits for ARS. Thus, even the Counterclaim Defendants concede that the benefit they received from AA is highly valuable. The claim, therefore, survives a *Twombly* challenge.

Counterclaim Defendants also argue that AA's unjust enrichment claim may be preempted by the Utah Trade Secrets Act ("UTSA"). The UTSA preempts any claim "to the extent that it is based on factual allegations supporting a misappropriation of . . . confidential information." *CDC Restoration & Const, LLC v. Tradesmen Contractors, LLC*, 2012 UT App

60, ¶ 48.  Counterclaim Defendants argue that if the information is confidential, then AA's claim is preempted because it is based on factual allegations supporting a misappropriation of confidential information.

      Counterclaim Defendants' argument that the UTSA may preempt AA's unjust enrichment claim has been exhaustively briefed in prior motions.  AA amended its counterclaim to emphasize that the actionable subject matter for the unjust enrichment claims is the ARS Software and AA specifically eliminated language about trade secrets and confidential information.  AA's unjust enrichment claim is based on its allegation that Reynolds, Mitchell, Kinum, and Sloan illegally obtained the ARS Software.  AA concedes that the ARS Software is not a trade secret.  The claim is not related to the confidential business information within the ARS Software which is the basis of AA's misappropriation of trade secrets claim.  Counterclaim Defendants have already conceded in prior briefing that their preemption argument fails in regard to the ARS Software.  The current motion merely rehashes an argument already resolved.

      Moreover, nothing in this court's decision on summary judgment relating to AA's misappropriation of trade secrets claim prevents AA from stating an unjust enrichment claim based on Counterclaim Defendants' use of the ARS Software.  Counterclaim Defendants arguments to the contrary fail to recognize that AA's misappropriation of trade secrets claim is based on the use of confidential business information that is housed within the ARS Software while AA's unjust enrichment claim is based on the use of the ARS Software.  The court concludes that AA's unjust enrichment claim as currently pleaded is not preempted by the UTSA.

      In addition, Counterclaim Defendants contend that AA's unjust enrichment claim may be

deficient because a contract covers the subject matter of AA's allegations. "Unjust enrichment is only available as an equitable remedy where one does not exist at law." *American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1193 (Utah 1996). Counterclaim Defendants claim that AA's allegations are not clear enough for them to determine whether AA's claim arises inside the context of a contractual relationship. Counterclaim Defendants also argue that the unjust enrichment claim should be dismissed because under Utah law a "[m]ere failure of performance by [a] contracting part[y] does not give rise to a right of restitution." *Commercial Fixtures & Furnishings, Inc. v. Adams*, 564 P.2d 773, 774 (Utah 1977). Counterclaim Defendants assert that if AA is alleging that the relevant Counterclaim Defendants illegally obtained the ARS Software through a failure of performance by ARS under the contract between ARS and AA, the claim would be precluded.

Counterclaim Defendants' contention that AA's unjust enrichment claim may be deficient because of the ARS License presupposes that AA brought claims for both breach of contract and unjust enrichment against the same party. AA did not name ARS as a defendant in AA's unjust enrichment claim because AA had a contract with ARS. AA's unjust enrichment claim is stated against Reynolds, Mitchell, Sloan, and Kinum because AA did not have a contract with those defendants. AA seeks restitution for their potential unjust enrichment in connection with the ARS Software. The unjust enrichment claim against those Counterclaim Defendants are not barred or precluded by ARS' failure to perform or duplicative of AA's breach of contract claim against ARS. It is a separate claim against separate defendants. Accordingly, the court finds no basis for dismissing AA's unjust enrichment claim.

**B. Tortious Interference and Conspiracy Claims**

Counterclaim Defendants further argue that AA's tortious interference with prospective business relations and conspiracy claims should be dismissed in part because they are preempted by the UTSA. Counterclaim Defendants contend that these claims are either preempted by the UTSA because they are based on factual allegations supporting a misappropriation of confidential information or ripe for dismissal because they fail to show how the Counterclaim Defendants can be held liable for obtaining and utilizing non-confidential information. Also, Counterclaim Defendants assert that the unfair competition allegations in AA's conspiracy claim should be dismissed because they relate to alleged misappropriation of trade secrets.

AA's allegations that Sloan and Kinum interfered with AA's business relations by purchasing the ARS Software or that Counterclaim Defendants conspired to compete unfairly and unlawfully with AA by diverting business from and diminishing the value of AA are not based on Counterclaim Defendants' misappropriation of confidential information. AA has not alleged that the ARS Software constitutes a protectable trade secret. AA has already amended both its tortious interference and conspiracy claims to eliminate reference to Counterclaim Defendants' misappropriation of trade secrets.

In addition, neither tortious interference nor conspiracy requires proof that a defendant misappropriated any confidential information. These claims stand on their own regardless of whether Counterclaim Defendants misappropriated AA's trade secrets. Moreover, Counterclaim Defendants' request that the unfair competition allegations in AA's conspiracy claim be dismissed to the extent that they trace back to alleged misappropriation of trade secrets is unnecessary. This court has already dismissed AA's unfair competition claim to the extent that it

is based upon the misappropriation of a trade secret, and AA has already amended its unfair competition claim to reflect the court's ruling.  AA has also amended its conspiracy claim such that it is not based on any allegations of trade secret misappropriation.  Counterclaim Defendants have improperly rehashed old arguments that have been fixed and mooted by AA's amendments.  The court finds no basis for dismissing AA's tortious interference or conspiracy counterclaims.  The court, therefore, denies Counterclaim Defendants' motion to dismiss.

## II. Counterclaim Defendants' Motion for Judgment on the Pleadings

Counterclaim Defendants move for judgment on the pleadings on AA's interference with existing contractual relations claims, interference with prospective business relations claim, and conspiracy claim.  While the motion to dismiss dealt with AA's tortious interference and conspiracy claims, this subsequent motion argues that separate allegations within those claims are preempted by the Copyright Act or fail to state a cognizable legal claim.

### A.  Copyright Preemption

Section 301(a) of the Copyright Act provides that state law claims relating to a work of authorship that has been fixed in a tangible medium of expression are preempted if "(1) the work is within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102 and 103; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Gates Rubber Co. v. Bando Chem Indus.*, 9 F.3d 823, 847 (10th Cir. 1993).

At the hearing on the motions, AA agreed to dismissal of the portion of its intentional interference with prospective business relations claim that refers to copyright infringement.  The allegation in that claim stated that "Sloan and Kinum . . . interfered with AA's prospective

business relations with AA's customers and prospective customers by utilizing AA's Creative Works." The cause of action as a whole is not preempted, only this one sentence. No portion of AA's claim for interference with existing contractual relations refers to copying or copyright infringement. Therefore, that claim is not relevant to this basis for dismissal. AA's conspiracy counterclaim is the only remaining claim Counterclaim Defendants' seek to dismiss based on copyright preemption.

AA asserts that Counterclaim Defendants cannot raise the affirmative defense of copyright preemption because they failed to plead the defense in their Answer or raise it during discovery. Counterclaim Defendants attempt to constructively amend their Answer to include a nascent affirmative defense for the first time in this Rule 12(c) motion. Counterclaim Defendants, however, assert that they can raise the affirmative defense in a motion for judgment on the pleadings as long as it is raised at least three months before trial. *Ball Corp. v. Zidex Corp.*, 967 F.2d 1440 (10th Cir. 1992).

The general rule is that a party waives its right to raise an affirmative defense when the party fails to raise the defense in its pleadings. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009). In *Creative Consumer Concepts*, the Tenth Circuit permitted an exception to the general rule because the opposing party had notice of the new affirmative defense during discovery. *Id.* at 1077. In this case, AA did not have notice of the defense during discovery. Fact discovery closed long before the motion was filed and Counterclaims Defendants have raised this defense only after having lost many issues on summary judgment.

Counterclaim Defendants, however, rely on *Ball Corp v. Xidex Corp.*, which also relied

on *Marino v. Otis Eng'g Corp.*, 839 F.2d 1404 (10th Cir. 1988). *Marino* is factually distinct because the opposing party received notice of the new affirmative defense during a deposition three months prior to trial. *Id*. at 1408. But both courts noted that the purpose behind FRCP 8(c) is putting "plaintiff on notice well in advance of trial that defendant intends to present a defense in the nature of an avoidance." *Id*.; *Ball Corp.*, 967 F.2d at 1443-44. In both of these cases, however, the court merely decided that it was not improper for the defense to be raised at trial. *Marino*, 839 F.2d at 1408; *Ball Corp.*, 967 F.2d at 1444. Neither case suggests to this court that there is a blanket rule that affirmative defenses can be raised if it is done at least three months before trial.

   Counterclaim Defendants cite a case from this court allowing an affirmative defense to be raised in a motion for summary judgment. But this court specifically noted that "there is no prejudice to Plaintiff in allowing the defense to be raised by motion . . . [because] the case is in the early stages of discovery." *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227 (D. Utah 2002). In addition, the Tenth Circuit recently distinguished *Ball* in a case in which the movant sought "to re-litigate the dispute on new bases" after having already lost motions for summary judgment. *Sky Harbor Air Serv. Inc. v. Reams*, 491 F. Appx. 875, 883-84 (10th Cir. 2012). Citing well-established principles for evaluating amendments to pleadings, *Sky Harbor* held that a party's attempt to constructively amend pleadings, even if within *Ball*'s three-month window, should be denied "if the amendment is an attempt to make a pleading a 'moving target' or ' to salvage a lost case by untimely suggestion of new theories.'" *Id.* at 884.

   In this case, Counterclaim Defendants filed their Answer to AA's Third Amended Counterclaim and asserted multiple new defenses, including preemption under UTSA, but not

copyright preemption. Counterclaim Defendants advanced this newest theory of preemption only after this court's order granting AA's motions for summary judgment and denying Counterclaim Defendants' motions. The lateness of the motion is more akin to *Sky Harbor* than *Ball Corp.* or *Marino*.

However, even if the court did not find that Counterclaim Defendant had waived the defense, the only case Counterclaim Defendants rely on the assert that AA's conspiracy claim is preempted by the Copyright Act recognizes that "the Copyright Act does not preempt claims for civil conspiracy in factual scenarios wherein the alleged conspiracy involves a conspiracy to commit an underlying tort or wrong other than copyright infringement." *Tegg Corp. v. Beckstrom Elec. Co.*, 650 F. Supp. 2d 413, 425 (W.D. Pa. 2008). In this case, AA alleges that Counterclaim Defendants acted to interfere with AA's contractual rights, interfere with AA's prospective business relations, and violate the Utah Unfair Competition Act. Because AA's conspiracy claim involves tort claims other than copyright infringement, the court concludes that it is not preempted.

**B. Legally Cognizable Claims**

Counterclaim Defendants further argue that AA's tortious interference claims do not allege improper means as required by Utah law. However, under well-established Utah law, a claim of tortious interference with contract does not require proof of improper means. *Jones v. Intermountain Power Project*, 794 F.2d 546, 554 (10th Cir. 1986). The mere inducement of a contract breach is sufficient. Improper means is only necessary for AA's tortious interference with existing and prospective economic relations.

Improper means include "threats or intimidation [and] deceit or misrepresentation."

*Overstock.com, Inc. v. SmartBargains, Inc.*, 2008 UT 55, ¶ 18, 192 P.3d 858.  Counterclaim Defendants argue that AA has not alleged any improper means other than misappropriation of trade secrets and copyright infringement, which cannot support a tortious interference claim because of the preemptive power of the UTSA and Copyright Act.  However, Counterclaim Defendants' argument ignores AA's detailed pleadings describing Counterclaim Defendants' extensive efforts to deceive AA by concealing not one but two secret sales of ARS in violation of AA's right of first refusal under the License Agreement.  AA also alleged threats to discontinue AA's access to the ARS Software, secret side agreements, and an unlawful plan to force the sale of AA to Mitchell and Reynolds.  These allegations are plainly in the claim and factual allegation sections of the counterclaim and are examples of threats, intimidation, deceit, and misrepresentation constitute improper means.  Accordingly, the court concludes that AA's claims for tortious interference of existing and prospective economic relations adequately pled improper means.

In addition, Counterclaim Defendants contend that AA's un-preempted conspiracy allegations have not adequately pled an underlying tort.  A civil conspiracy claim "require[s], as one of [its] essential elements, an underlying tort." *Puttuck v. Gendron*, 2008 UT App 362, ¶ 21, 199 P.3d 971.  Counterclaim Defendants contend that AA's allegations of underlying torts are either preempted by the Copyright Act or the UTSA and the remaining allegations point to underlying claims of tortious interference which are themselves defective.  However, the court concludes that AA's claim for conspiracy has also been adequately pled because the underlying claims are neither preempted nor defective, as discussed above.

## CONCLUSION

Based on the above reasoning, Counterclaim Defendants' Motion to Dismiss Third Amended Complaint (Docket No. 278) is DENIED, ARS's Motion for Leave to File Second Amended Complaint (Docket No. 302) is MOOT; and Counterclaim Defendants' Motion for Judgment on the Pleadings (Docket No. 315) is DENIED except, as discussed above, as to the one statement alleging copyright infringement in the tortious interference claim.

DATED this 21st day of February, 2017.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge