IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ADVANCED RECOVERY SYSTEMS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>AMERICAN AGENCIES, LLC, ET AL.,<br><br>    Defendants,<br><br>AMERICAN AGENCIES, LLC,<br><br>    Counterclaimant,<br><br>vs.<br><br>ADVANCED RECOVERY SYSTEMS, LLC, ET AL.,<br><br>    Counterclaim Defendants. | **AMENDED MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:13CV283DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on several pretrial motions: American Agencies, LLC's ("AA") Motion in Limine No. 1: Issues Resolved on Summary Judgment (Docket No. 339); AA's Motion in Limine No. 2: ARS' Disproven Allegations Regarding the $150,000 (Docket No. 340); AA's Motion in Limine No. 3: Irrelevant Personal Information (Docket No. 341); AA's Motion in Limine No. 4: Settlement Communications with Sajax Software, LLC (Docket No. 342); Advanced Recovery Systems, LLC, Kinum, Inc., Brent Sloan, Scott Mitchell, and Blake Reynolds'

("Defendants"[1]) Sealed Motion in Limine to Exclude Testimony of Richard S. Hoffman (Docket No. 338); Defendants' Motion in Limine No. 2 to Exclude Irrelevant and/or Prejudicial Evidence of or Reference to the Court's Prior Rulings (Docket No. 343); and Defendants' Motion to Compel Disclosure of Settlement Agreement and Accounting (Docket No. 361). On March 2, 2017, the court held a hearing on the motions. At the hearing, ARS, Kinum, Sloan, Mitchell, and Reynolds were represented by Richard D. Salgado and Steven R. Sumsion, and AA was represented by Robert O. Rice, Michael K. Erickson, and Aaron K. Olsen. The court took the motions under advisement. The court has carefully considered the parties arguments as well as the law and facts relevant to the motions. Now being fully advised, the court issues the following Memorandum Decision and Order.

**1. AA's Motion in Limine No. 1: Issues Resolved on Summary Judgment**

AA's first motion in limine seeks: (1) a preliminary instruction read to the jury summarizing the court's relevant summary judgment findings and conclusions; (2) exclusion of the amount of damages the court awarded AA for ARS' breach of contract, a ruling that those damages will be awarded to AA if the jury finds liability on AA's interference with contract claim, and preclusion of Defendants' expert Ted Tatos from testifying at trial; and (3) preclusion of any argument or evidence at trial for the purpose of contradicting the findings and conclusions previously decided by the court.

In the court's September 28, 2016 Memorandum Decision and Order, the court found in favor of AA on its breach of contract claim against ARS and awarded AA $1,549,595.40. The court

---

[1] Although these parties are technically Counterclaim Defendants, the parties have agreed, going forward, to refer to AA as Plaintiff and the Counterclaim Defendants as Defendants given that the only remaining claims going to trial are AA's counterclaims.

also found ARS and Kinum liable for misappropriation of AA's trade secrets. At trial, AA seeks to have the jury find Sloan, Mitchell and Reynolds liable for misappropriation of AA's trade secrets and damages from all defendants on the claim. AA will also be pursuing its claims against Defendants for breach of the covenant of good faith and fair dealing, unjust enrichment, interference with existing contractual relations, interference with prospective business relations, copyright, and conspiracy.

First, the parties agree that a summary of the court's findings is relevant and will provide context for the jury. The court's findings and conclusions under FRCP 56 are established in the case and are no longer in dispute. The preliminary instruction will make the trial more efficient and preclude the re-litigation of matters that were already decided. The parties only disagree as to the content of the preliminary instruction.[2] The parties each submitted proposed instructions, but AA's instruction contains too much information and Defendants' instruction contains insufficient information. The court, therefore, will fashion a preliminary instruction from those proposals and provide it to the parties prior to trial.

Second, the parties agree that they will not mention the amount of damages the court awarded AA for ARS's breach of contract and that Defendants will not call their expert witness Ted Tatos. The parties disagree, however, on whether the proper measure of damages for Defendants' potential liability on AA's intentional interference with contract claim is the same as the damages the court awarded for breach of contract. AA argues that if the jury finds Defendants liable for tortious interference with contract, then the damages the court awarded for ARS' breach of contract should be awarded on that claim as well. Defendants, however, claim that AA can only recover lost

---

[2] At the hearing on the motions, Defendants agreed to have the instruction read prior to trial.

profits on its intentional interference claim and only about $400,000 of the $1.5 million breach of contract damages are lost profits. Interestingly, the parties rely on the same Utah Supreme Court case for their positions, *TruGreen Cos. LLC v. Mower Bros, Inc.*, 2008 UT 81, 199 P.3d 929.

In *TruGreen*, the court "recogniz[ed] that the Utah Court of Appeals adopted section 774A of the Restatement (Second) of Torts, which defines the measure of damages for tortious interference with a contract." *Id*. at ¶ 22. Section 774A provides damages for "(a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." *Id.* The *TruGreen* court found "especially instructive the analysis" in a Third Circuit case that "held that where 'there are no injuries alleged other than pecuniary losses . . . the measure of damages for interference with contractual relations will be identical to that for breach of contract.'" *Id.* at ¶ 23 (quoting *American Air Filter Co. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir. 1975). Because the court held "that purely pecuniary losses from tortious interference are measured by the same standard as breach of contract," it then applied the same measure of damages as it had applied for the breach of the noncompete agreement, which was lost profits. *Id.* at ¶ 24.

Based on *TruGreen*, Defendants argue that AA can only recover lost profits for its intentional interference with contract claim. However, that argument ignores the *TruGreen* court's discussion that Utah recognizes the damages available under Section 774A of the Restatement (Second) of Torts and that in cases of purely pecuniary losses from tortious interference with contract the measure of damages are measured by the same standard as breach of contract. Under the facts at issue in *TruGreen*, the measure of damages for intentional interference with contract was lost profits because the breach of contract damages for breach of a noncompete agreement was lost

4

profits. *Id.* ¶ 24. However, in a case involving a different measure of damages for the breach of contract at issue, the measure of damages for intentional interference with contract would mirror the breach of contract damages. *Id.* ¶ 23-24. Therefore, the pecuniary loss the court found for the ARS breach of contract--which was not based on a breach of a noncompete agreement but, rather, the breach of a right of first refusal--is the same pecuniary loss applicable to AA's tortious interference with contract claim.

In this case, ARS has already proven its pecuniary loss for ARS' breach of contract and the court awarded AA that amount on summary judgment. Defendants take issue with whether AA should be required to prove the pecuniary loss to the jury, but the pecuniary loss the court imposed on summary judgment was calculated by ARS' expert witness. Defendants have not argued that it would have any different evidence or calculations to present at trial. Defendants agreed that they do not intend to call their expert witness who calculated those damages at trial. Defendants argued only that AA should be limited to lost profits. Therefore, the court concludes that, at trial, the jury need only determine whether there is liability for intentional interference with contract. If the jury finds liability, the damages will then be the same measure of damages imposed for breach of contract.

Defendants argues that applying the same amount of damages to each Defendant found liable for intentional interference with contract amounts to joint and several liability, which is not consistent with Utah's law requiring apportionment of responsibility for intentional torts. In *Graves v. North Eastern Services, Inc.*, 2015 UT 28, 345 P.3d 619, parents brought a negligence action against a residential treatment facility after an employee at the center sexually assault their child. The court explained that Utah abrogated the common law doctrine of contributory negligence decades ago through the 1973 Comparative Negligence Act and the Liability Reform Act of 1986.

*Id.* at ¶ 44. *Graves*, however, presented the court with its first occasion to determine whether Utah's "comparative negligence regime provides for allocation of responsibility for intentionally tortious conduct." *Id.* at ¶ 45. The court determined that Utah's "statutory comparative liability regime . . . call[s] for apportionment of responsibility for intentional torts." *Id.* at ¶ 46.

Based on *Graves*, Defendants claim that the court must allow the jury to allocate fault to each of the Defendants. But the *TruGreen* court explained that "the plaintiff's losses is the appropriate method of measuring damages in cases of tortious interference with contractual and economic relations." 2008 UT 81 ¶ 22. And, in a case involving only pecuniary losses, the losses are measured by the same standard as a breach of contract. *Id.* ¶ 24. For such cases, the *TruGreen* court rejected the argument that "a tort measure" of damages should be used. *Id.* at ¶ 25. Each Defendant, based on his or its actions, may be liable for intentional interference with contract. If that Defendant is liable for tortious interference, then that Defendant is liable for AA's losses, which are measured by the same standard as a breach of contract, not a tort measure. AA's losses have already been calculated by Defendants' expert and adopted by this court. Moreover, Defendants agreed that their expert witness Tatos will not be testifying as to his calculations. The court, therefore, does not believe that application of those damages to any Defendant found liable for tortious interference with contract is contrary to *Graves*' scheme of allocation.

At the hearing on the motions in limine, Defendants also raised for the first time whether Defendants Mitchell and Reynolds are proper defendants under AA's intentional interference with contract claim because they were signatories to the ARS-AA License Agreement for ARS. This argument is essentially a motion to dismiss those parties from the cause of action. It is hard to understand why Defendants did not raise this issue in one of their prior motions to dismiss, motions for judgment on the pleadings, and motions for summary judgment. In fact, Defendants included

Mitchell and Reynolds on their proposed special verdict form.[3]  Nonetheless, the court does not want to expose a party to liability on a claim to which that party may not be a proper defendant.  Therefore, the court requests briefing on this issue prior to trial.  Each party shall file a brief on the issue that is no longer than seven pages by noon on March 9, 2017.  While this issue probably does not need to be decided prior to the court reading the jury instructions, given the number of claims and parties in this action, the court would like the issue determined before opening arguments so that the parties can clarify to the jury which claims are asserted against which parties.

      Finally, AA asks the court for an order precluding Defendants from making any argument or introducing any evidence at trial for the purpose of contradicting the findings and conclusions previously decided by the court.  Although Defendants argued in their briefing that they should be allowed to present evidence that is pertinent to the remaining claims if it will absolve the individual defendants from personal liability even if those arguments or evidence is contrary to the court's findings.  In addition, Defendants' proposed jury instructions ask the jury to determine whether AA took reasonable measures to protect the secrecy of the AA data and whether the AA data confers a competitive advantage on AA, both of which has already been decided by the court.  At the hearing on the motions, however, Defendants stated that they have no plans to argue that AA breached the License Agreement, that ARS did not breach the License Agreement, or that AA's data housed in the ARS Software was not a trade secret.  The court believes Defendants that they have no intention of relitigating matters already decided by the court but, nonetheless, cautions them against doing so.

      The court, therefore, grants AA's Motion in Limine No. 1, as discussed above.

---

[3] After raising this issue at the hearing, Defendants submitted an amended special verdict form with only Kinum and Sloan listed for the tortious interference with contract claim.

**2.   AA's Motion in Limine No. 2: ARS' Disproved Allegations Regarding the $150,000**

AA seeks an order that Defendants are prohibited at trial from presenting any argument or evidence concerning the $150,000 payment to AA, including any argument or evidence of: (1) ARS' notice of breach to AA and all other allegations that AA breached the License Agreement, including without limitation testimony concerning the documents listed in Exhibit A; (2) the late-produced "ARS QuickBooks Info" and "Audit Trail Report"; and (3) any retention or purported use of the $150,000 by AA, NRA Group LLC, or Steve Kusic.  Defendants do not dispute the exclusion of the Audit Trail Report or the ARS QuickBooks information.  Therefore, the court excludes those items from being entered as evidence.

First, AA argues that the court should exclude any argument or evidence concerning ARS' notice of breach to AA and all other allegations that AA breached the License Agreement or improperly retained the $150,000 because the court dismissed all of ARS' claims–breach of contract, unjust enrichment, conversion, and money had and received–on summary judgment. Evidence in support of dismissed claims is irrelevant under FRE 402 and more prejudicial than probative under FRE 403.  In addition, AA's retention and any purported use of the $150,000 payment are not relevant to any other pending claim or defense that will be submitted to the jury.

Defendants argue that AA's retention and alleged misuse of the $150,000 is relevant to the understandings, thoughts, and subjective intents of the individual Defendants.  In order for the individual Defendants to be personally liable for AA's remaining claims, AA must show personal participation and, in some cases, that such participation was willful and malicious.  Therefore, the individual Defendants' states of mind are relevant.

AA must show willful and malicious misappropriation to be entitled to exemplary damages and attorney fees, but there is no such requirements for holding individual defendants liable for the

actual losses caused by the corporations' misappropriation. The applicable law governing personal liability in this case was set forth in *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶20, 70 P.3d 35, and *d'Elia v. Rice Development, Inc.*, 2006 UT App 416, 147 P.3d 515. These cases establish that corporate officers and limited liability members who participate in a corporation's tortious acts are personally liable. *Id.* AA's claim for misappropriation of trade secrets is not dependent on Defendants' allegations concerning the $150,000. The court already found that even if AA was in breach, there is no basis for Defendants' assertion that AA surrendered the AA data to ARS when it failed to make the payment. AA would have retained its ownership interest in its data even if it had been the first to breach the License Agreement. Any argument about whether anyone thought AA was in breach is irrelevant to whether ARS could secretly transfer AA's data to another party. In recognizing the tort of interference with contract, the Utah Supreme Court adopted Section 766 of the Restatement (Second) of Torts, which explains that a defendant "is subject to liability even though he is mistaken . . . and believes that the agreement is not legally binding or has a different legal effect from what it is judicially held to have." Restatement (Second) of Torts § 766 (1979). The United States Supreme Court has rejected the notion that a mistaken belief about a contract's validity renders tortious interference unintentional. *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S Ct. 1920, 1930 (2015).

     Even with respect to the willful and malicious standards necessary for exemplary damages and attorney fees, the court does not believe that the specifics of Defendants' mistaken beliefs are necessary–such as the specific dispute about the $150,000. Defendants can argue that they mistakenly believed that AA had breached the contract, but there is no need to get into the specifics of the dispute. This court found the belief to be in error and it would only lead to relitigating the issue in front of the jury, which would require the court to repeatedly instruct or remind the jury that

the court had found otherwise. Such repeated reminders to the jury would not be helpful for either side. Moreover, what AA or Kusic may have done with the $150,000 while it retained the funds is completely irrelevant.

Accordingly, AA's Motion in Limine No. 2 is granted in part and denied in part as discussed above.

3. **AA's Motion in Limine No. 3: Irrelevant Personal Information**

AA seeks an order prohibiting Defendants from introducing any argument or evidence concerning or otherwise referring to (1) the residency of the parties or their offices in an advantageous or demeaning way and (2) Scott Mitchell's football career, celebrity status, or other activities that are irrelevant to this case.

The parties appear to have reached agreement on this motion. The parties can mention geographic locations relevant to basic facts in the case, but they should not be used in any way that would appear to give Defendants a tactical advantage with a Utah jury. Defendants should counsel their witnesses against testimony that would cast AA and its officers as outsiders or unfamiliar with Utah culture. Similarly, AA should not call attention to the fact that Defendants' attorney is from Texas. In addition, Defendants agreed not to mention Scott Mitchell's football career. Based on the parties agreements on this motion, the court finds AA's Motion in Limine No. 3 to be moot.

4. **AA's Motion in Limine No. 4: Settlement Communications with Sajax Software, LLC**

AA seeks to exclude any evidence or discussion of settlement communications between AA and Sajax Software, LLC, including the settlement agreement executed by AA and Sajax and any consideration under that agreement. The court dismissed Sajax's claims against AA, except for unjust enrichment, and found Sajax liable for misappropriation of AA's trade secrets. AA and Sajax then resolved the remaining issues between them, entered into a confidential settlement agreement,

and agreed to have the court dismiss all claims pending against each other.

AA argues that the court should exclude any evidence or discussion of settlement between AA and Sajax under FRE 408. FRE 408 provides that settlement agreements, negotiations, and related communications are not admissible as evidence on behalf of any party either to prove or disprove the validity or amount of a claim. Defendants, however, point out that FRE 408 does not prevent the admission of settlement-related evidence for certain other purposes, such as "proving a witness's bias or prejudice." Fed. R. Evid. 408(b).

The court concludes that Defendants can use the settlement information only for the purpose of proving a witness's bias or prejudice, and to do so, the court will require Defendants to give the court notice of their intention to use the information and to obtain specific permission from the court before using the information. Defendants are not to permitted to introduce evidence or arguments of settlement in any other fashion.[4] AA's Motion in Limine No. 4, therefore, is granted in part and denied in part.

**5. Defendants' Sealed Motion in Limine to Exclude Testimony of Richard S. Hoffman**

Defendants seek to prohibit AA's damages expert Richard S. Hoffman from testifying as to AA's alleged lost profits and copyright damages. Defendants previously filed a Motion to Strike the Expert Report of Richard Hoffman and then withdrew their motion and the court denied it as moot because the parties agreed that the QuickBooks File would not be submitted as evidence. The parties continue to agree that the .

The parties have a significant disagreement regarding the production of an electronic

---

[4] Defendants also argue that AA's settlement terms with Sajax is relevant to damages and final calculations in the form of setoff and avoiding double recovery, but those issues will not be jury issues and are irrelevant to the motion in limine.

software program AA used, known as QuickBooks.  AA provided the electronic QuickBooks File to Defendants in connection with Richard Hoffman's expert report.  Defendants claim that the QuickBooks File should have been disclosed during fact discovery.  However, AA asserts that it produced the relevant financial and accounting data requested during fact discovery.  However, as a convenience to Hoffman, AA gave him direct access to its entire QuickBooks accounting system in the form of an export file of all accounting and financial data from the system.  The QuickBooks file included volumes of irrelevant material in addition to the relevant information.  Therefore, AA was not required to produce the entire QuickBooks File during fact discovery, and Defendants have not demonstrated why it should have.

      When AA produced Hoffman's report to defendants, AA identified the QuickBooks file as a document Hoffman had received.  However, based on the volume of irrelevant information, Hoffman did not consider the entire QuickBooks file.  Instead, Hoffman excerpted all the facts or data he considered in forming his opinions from the QuickBooks File in his report, as required by FRCP 26(a)(2)(B)(ii).  However, in connection with Hoffman's Report, AA also produced the entire QuickBooks File to Defendants.  Although there were some issues with Defendants being able to access the QuickBooks program, AA worked with Defendants and eventually purchased a new version of QuickBooks in order to provide Defendants with a version of the QuickBooks File that Defendants' experts could work with.  The court finds nothing contrary to the rules in AA's approach to this.  And, despite the problems with accessing the file, Defendants did not ask for an extension of time for their expert to prepare a counter report.  If there was a problem, the correct course would have been to merely seek more time to prepare the report.

      Defendants argue that AA's previous statements regarding the use of documents identified in Appendix A of the Hoffman's Expert Witness Report preclude Hoffman from offering an opinion

on lost profits.  However, there appears to have been a misunderstanding between the parties as to what materials AA intended to use to support Hoffman's opinions.  It is clear that AA did not and does not now intend to use the QuickBooks File as evidence at trial.  Rather, AA intends to use the schedules Hoffman prepared from that data to summarize or support his opinions.  The schedules in the Hoffman's report include a list of all the data and information required to support Hoffman's calculations and opinions about AA's lost profit damages.  Those schedules contain information that was produced during fact discovery.  Defendants have not identified any evidence contained in the schedules that it did not have prior to the production of the QuickBooks File.  The evidence appears to demonstrate that the QuickBook Files was merely an electronic version of those records, and provided as a convenience.  The court, therefore, finds no basis for striking those schedules or for precluding Hoffman's testimony.   Accordingly, the court denies Defendants motion to exclude Hoffman's report and testimony.

In addition, Defendants argue that Hoffman's opinion as to copyright damages is beyond the scope of his report and he should be precluded from testifying as to those damages. However, Hoffman is not attempting to be an expert on the legal cause of action.  He is a damages expert.  It is not the role of an expert witness to draw conclusions about the causation of damages.  The expert bases a calculation of damages on an assumption that counsel provides.  Counsel and fact witnesses have to persuade a jury to find liability.  The damages expert crunches the numbers based on an assumption of liability.

Hoffman's report analyzes distinct economic consequences that AA alleges arose based on multiple causes of action.  Hoffman identifies three categories of damages–AA's lost profits, AA's loss of exclusivity, and Defendants' unjust enrichment.  At trial, AA will offer evidence that Defendants' copyright infringement proximately caused AA's lost profits and Defendants' unjust

enrichment. AA will then present Hoffman as a witness to explain the amount of AA's lost profits and Defendants' unjust enrichment. Hoffman's report discloses the basis for his opinions regarding the amount of AA's lost profits and Defendants' unjust enrichment.

There is no basis for Defendants' assertion that it would be highly prejudicial to them to allow Hoffman to testify regarding copyright damages. Hoffman is not testifying as to AA's copyright infringement claim or any specific amount of copyright damages. His testimony focuses on his calculation of the economic consequences to AA of Defendants' alleged misconduct based on an assumption that AA will be able to convince the jury that Defendants' engaged in misconduct. AA will not be presenting any new category of copyright damages at trial or suggest that Defendants are liable for any additional amount of damages based on their alleged copyright infringement. Hoffman made clear in his deposition that any damages for copyright infringement was contained within his calculations for lost profits and unjust enrichment. Therefore, Defendants have been aware of Hoffman's position since his deposition. Accordingly, the court finds no basis for precluding Hoffman from testifying.

**6.  Defendants' Motion in Limine to Exclude Irrelevant and/or Prejudicial References to Court's Prior Rulings**

Defendants seek an order that would preclude any AA witnesses or attorneys from offering any argument, testimony, or references to, or otherwise expound upon or explain the court's rulings in its September 28, 2016 Memorandum Decision and Order. While the court has found ARS liable for breach of contract and ARS and Kinum liable for misappropriation of trade secrets, there are several remaining issues for trial. The jury must decide if there are any damages associated with ARS and Kinum's misappropriation of trade secrets, the liability and any damages of the individual defendants for misappropriation of trade secrets, and whether the misappropriation was willful or

malicious. The jury must also decide if AA is entitled to attorney fees in addition to the damages this court awarded AA for ARS' breach of contract.

Defendants are concerned that AA will exploit the court's findings by unnecessarily repeating the findings of ARS and Kinum's liability to the jury and implying that the individual defendants are also liable or should be deemed liable. Defendants also argue that ARS' and Kinum's liability for misappropriation of trade secrets has no bearing on the jury's determination of liability as to the individual defendants.

But, under Utah law, corporate officers are liable for a corporation's tortious conduct if the officers participated in the corporation's tortious conduct. *Armed Forces Ins. Exch.*, 2003 UT 14 at ¶ 19. To determine whether Sloan, Mitchell, and Reynolds are liable for the misappropriation of AA's trade secrets, the jury must determine whether they, as corporate officers, participated in the actions of Kinum and ARS to misappropriate trade secrets. In addition, the jury will be determining whether AA is entitled to damages based on the court's determination that ARS and Kinum are liable for misappropriation of trade secrets. There is no need to relitigate the facts the court determined in connection with their liability. Therefore, the jury must be informed of the specific actions the court found to be evidence of misappropriation.

Defendant further claims that ARS' liability for breach of contract is separate and apart from the other claims in this case. However, it is directly related to AA's tortious interference with contract claim. To find tortious interference with contract, the jury must find that the contract was breached and a wholesale preclusion from stating that this court found a breach would be untenable. AA is also seeking further damages with respect to its breach of contract claim against ARS.

Defendants contend that the court's findings have limited probative value at trial. However, there is no need to relitigate several matters already found by the court that are instrumental pieces

of the remaining issues for trial. The court agrees that AA should not unduly focus on the court's prior findings or attempt to conflate the parties' potential liabilities on matters. But some mention of the court's findings will be necessary, especially during opening statements and closing arguments. AA will also need to mention the court's prior findings if any of Defendants' witnesses testify contrary to matters already found by the court. However, the court cautions AA against referring to the court's findings unnecessarily. Accordingly, Defendants' motion is granted in part and denied in part.

**7. Defendants' Motion to Compel Disclosure of Settlement Agreement and Accounting**

Defendants argue that the settlement agreement between AA and Sajax is discoverable under FRCP 26(b), which states that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.[5] The court has already ruled that the settlement agreement is relevant to Defendants' ability to prepare for witnesses who may have a bias or prejudice as a result of the settlement. The court recognizes that such relevance is quite limited. The two witnesses identified to have a potential bias were deposed prior to the settlement and any change in testimony could be challenged with the witnesses' original testimony. Nonetheless,

---

[5] Defendants claim that AA's refusal to turn over the settlement agreement is a willful violation of its discovery responsibilities, but Defendants did not identify any applicable discovery request requiring production of the settlement agreement. A statement that their prior discovery request were broad enough to encompass it is insufficient to demonstrate a willful discovery violation. Had Defendants provided AA with a written request for the settlement agreement, Defendant could have identified the discovery request it believes would be applicable. However, Defendants failed to follow the procedures provided for in the court's local rules. AA is correct that this type of failure is grounds for denying a motion outright. The court's local rules regarding motions to compel do not merely recite niceties and professional courtesies. The rules help focus the parties disputes and can be helpful in resolving disputes before the court's involvement is necessary. For instance, Defendants expressed frustration because they claim to have made repeated oral requests for the settlement agreement. But such frustration is hard to sympathize with when the rule requires a written request.

Defendants may be able to attribute any such change in testimony to a favorable settlement.

Although the settlement agreement is inadmissible, the court finds it discoverable for purposes of witness preparation. AA's settlement agreement with Sajax is a confidential document. Therefore, AA should produce the settlement agreement under the parties' protective order with an "attorneys' eyes only" designation. As discussed above, the settlement agreement cannot be used at trial without prior approval from the court.

## CONCLUSION

Based on the above reasoning, AA's Motion in Limine No. 1: Issues Resolved on Summary Judgment (Docket No. 339) is GRANTED; AA's Motion in Limine No. 2: ARS' Disproven Allegations Regarding the $150,000 (Docket No. 340) is GRANTED IN PART AND DENIED IN PART; AA's Motion in Limine No. 3: Irrelevant Personal Information (Docket No. 341) is MOOT; AA's Motion in Limine No. 4: Settlement Communications with Sajax Software, LLC (Docket No. 342) is GRANTED IN PART AND DENIED IN PART; Defendants' Sealed Motion in Limine to Exclude Testimony of Richard S. Hoffman (Docket No. 338) is DENIED; Defendants' Motion in Limine No. 2 to Exclude Irrelevant and/or Prejudicial Evidence of or Reference to the Court's Prior Rulings (Docket No. 343) is GRANTED IN PART AND DENIED IN PART; and Defendants' Motion to Compel Disclosure of Settlement Agreement and Accounting (Docket No. 361) is GRANTED with the limitations discussed above.

DATED this 6th day of March, 2017.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge