IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ADVANCED RECOVERY SYSTEMS, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN AGENCIES, LLC, ET AL.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:13CV283DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Advanced Recovery Systems, LLC ("ARS"), Kinum, Inc., Scott Mitchell, Blake Reynolds, and Brent Sloan's (collectively, "Defendants")[1] Motion for Offset Damages Based on Settlement. The parties have fully briefed the motion. The court concludes that a hearing would not significantly aid in its determination of the motion. Accordingly, the court issues the following Memorandum Decision and Order based on the memoranda submitted by the parties, as well as the law and facts relevant to the motion.

## DISCUSSION

### Defendants' Motion for Offset of Damages Based on Settlement

Defendants ask the court to offset the judgment against them by the amount Sajax paid AA to settle the claims AA brought against Sajax. In seeking offset, Defendants rely on the "one satisfaction rule." "[U]nder the 'one satisfaction rule,' when the conduct of multiple defendants

---

[1] Because only counterclaims proceeded to trial, the parties agreed to switch the original plaintiff/defendant designations in this case.

results in a single injury with common damages, and one of the defendants settles with the plaintiff, the amount of the settlement is credited against the amount that may be recovered from the non-settling defendants." *Friedland v. TIC-THE Industrial Co.*, 566 F.3d 1203, 1209 (10th Cir. 2009). The one satisfaction rule "is directed at the victim's injury, and not at the causes of action that may arise from that injury." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1261 (10th Cir. 1988). "Where a single injury gives rise to more than one claim for relief, a plaintiff may recover his damages under any claim, but he may recover them only once." *Id.* at 1261-62.

"[A]s a general rule, a party seeking credit for an amount received in settlement bears the burden of proving 'that the damages assessed against him have in fact and in actuality been previously covered in a prior settlement.'" *Id.* (citation omitted). But "where a plaintiff settles with some defendants, and the non-settling defendants are not parties to the settlement agreements, the non-settling defendants need show only that the plaintiff settled claims with other parties on which the non-settling defendants were found liable at trial." *Id.* at 1262. "If the defendants make this showing, the burden then shifts to the plaintiff to prove that, under the terms of its agreement with the settling defendants, the settlement did not represent common damages with the jury award." *Id.*

Therefore, if AA's injury and the damages it alleges in this lawsuit are the same as those addressed by the Sajax settlement, "then the defendants are entitled to a full credit in the amount of the settlements." *See Friedland*, 566 F.3d at 1029. AA's claims against Sajax and Defendants were not the same. AA alleged a violation of Utah's Unfair Competition Act ("UCA") against Sajax, but not against the other Defendants. The court must determine then whether that claim

2

encompassed the same injury as the other claims. In prior motions in this case, this court specifically determined that AA's UCA claim was based on malicious cyberactivity and not duplicative of AA's trade secrets claim. In addition, malicious cyberactivity is distinct from the breach of contract issues relating to a right of first refusal or software license violations. Accordingly, as in *United States v. Burlington Northern R.R.,* 200 F.3d 679 (10th Cir. 1999), the harm is divisible and not common to both defendants. *Id.* at 698. The Sajax Settlement Agreement did not specifically allocate amounts between the several causes of action, however, a portion of the Sajax settlement cannot be credited to the other Defendants because of the separate and divisible claim for unfair competition which was brought only against Sajax.

Although Defendants contend that the other claims AA settled with Sajax were based on the same injuries for which the jury awarded AA damages at trial, not all of the claims are based on the same injury. For example, Sajax's use of AA's trade secrets was distinct from the other parties' use of AA's trade secrets. AA did not allege that there was only one use of its trade secrets and all the Defendants participated. AA alleged several different uses of its trade secrets and the court asked the jury to award damages as to each person or entities' use of AA's trade secrets. The jury verdict did not merely state that AA was damaged in the amount of $304,942.00 for Defendants' misappropriation of AA's trade secrets. The jury instructions explained to the jury that each Defendant's actions had to be considered separately for each cause of action and the verdict form asked the jury to determine the damages amount each individual Defendant owed AA for misappropriation of trade secrets. The jury found that Kinum owed AA $101,891, ARS owed AA nothing, Sloan owed AA $52,831, Mitchell owed AA $66,239, and Reynolds owed AA $82,981. Similarly, the jury found specific amounts for each individual

Defendant on the unjust enrichment claim based on the amount of benefit, if any, that individual Defendant unjustly retained. The jury found that Kinum unjustly retained $275,676, Sloan unjustly retained $161,494, Mitchell unjustly retained $78,656, and Reynolds unjustly retained $138,002. These amounts are tied to the evidence pertaining to each specific Defendant. Based on this type of jury verdict, there is no basis for the court to determine that the conduct of multiple defendants resulted in a single injury with common damages. Accordingly, an offset in relation to the misappropriation of trade secrets and unjust enrichment claims would be inappropriate on these several and independent claims.

With respect to the remaining claims on the verdict, the implied covenant of good faith and fair dealing claim is only against ARS and the interference with business relations claim allocates damages for each individual Defendant like the trade secrets and unjust enrichment claims. The interference with business relations claim relied on findings that the Defendants were recklessly indifferent to AA's relationships with its customers when they interfered with those relationships to their own advantage. The damages awarded in relation to each Defendant would represent that Defendant's liability. There is no indication that those damages relate in any way to Sajax's liability or that those damages would be a common damage based on the same injury or conduct.

The only claims for which the jury did not allocate separate individual damages against each Defendant were the interference with contract claim and copyright infringement claim. The jury awarded $10,000 on the copyright infringement claim against all of the Defendants jointly. And, on the interference with contract claim, the court determined prior to trial that the damages against any Defendant found liable on the claim would be AA's pecuniary loss for ARS' breach

of contract which the court awarded AA on summary judgment, $1,549,595.40. The Defendants who went to trial on this claim are jointly and severally liable for the amount because the jury found a civil conspiracy to interfere with AA's contractual rights in the AA/ARS Agreement. The court concludes that Sajax's settlement on these claims represent a single injury and common damages. However, these claims are only two of the many claims AA brought against Sajax. Therefore, the court cannot appropriately offset the entire amount of Sajax's settlement on these claims. Because the damages for the interference with contract claim was approximately equal to the damages awarded by the jury on the other claims, the court offsets $400,000 of the Sajax settlement against the interference with contract claim. The court also offsets $5,000 of the Sajax settlement against the copyright claim. *See TBG, Inc. v. Bendis*, 36 F.3d 916, 923 (10th Cir. 1994) (although *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 204 (1994) is only binding on admiralty cases, courts should apply its proportional fault credit when they are free to choose).

AA argues that Defendants are not entitled to any setoff because they should have sought an allocation of fault on the verdict form under Utah's comparative negligence scheme. However, the court ruled on a motion in limine prior to trial that the measure of damages on the intentional interference with contract claim was contractual damages, not tort damages, and denied Defendant's request to have each Defendant's fault allocated.[2] The court cannot deny

---

[2] The court previously ruled on the parties' motions in limine as follows: "Based on *Graves*, Defendants claim that the court must allow the jury to allocate fault to each of the Defendants. But the *TruGreen* court explained that 'the plaintiff's losses is the appropriate method of measuring damages in cases of tortious interference with contractual and economic relations.' 2008 UT 81 ¶ 22. And, in a case involving only pecuniary losses, the losses are measured by the same standard as a breach of contract. *Id.* ¶ 24. For such cases, the *TruGreen* court rejected the argument that 'a tort measure' of damages should be used. *Id.* at ¶ 25. Each

5

Defendants the ability to seek allocation on the claim and then find against them because there was no allocation of fault.

**CONCLUSION**

Based on the above reasoning, Defendants' Motion for Offset of Damages Based on Settlement is GRANTED IN PART AND DENIED IN PART. The court offsets $400,000 of the Sajax Settlement against the damages awarded on the Interference with Contract claim and $5,000 of the Sajax Settlement against the damages awarded on the Copyright Infringement claim. The court requests that AA submit a Final Judgment to the court within five days of the date of this Order incorporating the setoffs granted in this Order.

DATED this 26th day of October, 2017.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge

---

Defendant, based on his or its actions, may be liable for intentional interference with contract. If that Defendant is liable for tortious interference, then that Defendant is liable for AA's losses, which are measured by the same standard as a breach of contract, not a tort measure. AA's losses have already been calculated by Defendants' expert and adopted by this court. Moreover, Defendants agreed that their expert witness Tatos will not be testifying as to his calculations. The court, therefore, does not believe that application of those damages to any Defendant found liable for tortious interference with contract is contrary to *Graves*' scheme of allocation."